*E-FILED - 3/3/11*

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| JOSEPH LAWRENCE PATTERSON, | ) | No. C 09-3536 RMW (PR) |
| Petitioner, | ) ) | ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS; |
| vs. | ) ) | DENYING CERTIFICATE OF APPEALABILITY |
| J.F. SALAZAR, Warden, | ) ) | |
| Respondent. | ) ) | |

Petitioner, a California prisoner proceeding pro se, filed a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Respondent filed an answer and a supporting memorandum of points and authorities addressing the merits of the petition. Instead of filing a separate traverse, petitioner opted to use his petition in lieu of a traverse. Petitioner has also filed a motion to add a supporting case citation to his petition. Petitioner's motion is granted. (Docket No. 17.) Having reviewed the papers and the underlying record, the court concludes that petitioner is not entitled to habeas corpus relief and denies the petition.

**FACTUAL BACKGROUND**

In December 2006, the victim, petitioner's 11-year old daughter, was living with petitioner and his parents. (People v. Patterson, No. H033021 (Cal. App. 6 Dist. March 19,

2009), Resp. Ex. K at 1.) During the first week, the victim slept on the couch, and petitioner slept on the recliner. (Id. at 2.) On December 8, 2006, the victim and petitioner decided to watch scary movies together. (Id.) The victim got her pillow and blanket and lay on petitioner's lap, facing the television. (Id.) At some point, the victim fell asleep. (Id. at 3.) She woke up because she had been having a bad dream about fighting someone with a stick, and then realized that she was holding petitioner's naked penis. (Id.) Petitioner's hand was around hers, moving it "up and down." (Id.) The victim noticed that petitioner was watching naked ladies on television. (Id.) She pulled her hand away, pretended that she was having a bad dream, and covered herself up tightly with the blanket. (Id.) The victim felt scared. (Id.) Then she pretended to wake up and asked the petitioner for water. (Id.) When petitioner got up to get the water, the victim moved to the recliner because she "did not want it to happen again." (Id.) Then she went to the bathroom to wash her hands because "they smelled nasty." (Id.) She testified that she thought there was leftover milk or ice cream on her hand and the substance was "gooey." (Id.)

      The victim did not tell anyone about what had happened until the following night when she called her half-brother, H. (Id.) Later that night, the police showed up at the victim's house. (Id.) The victim spoke with them at the house, and then went to the police station and spoke with them again. (Id.)

      At trial, H. testified that the victim called him and they talked for a few minutes before she told him that she had fallen asleep on petitioner's lap, and when she woke up, her hand was on his "crotch." (Id.) H. told his stepmother, who called the social worker. (Id.) H. and his father then went to the police station to file a report. (Id.) After the police arrived, petitioner's mother woke up and went into the living room. (Id. at 4.) The victim was crying and told petitioner's mother the same story she had told H., and confessed that that was why the police were there. (Id.)

      Officer Heylen went to the victim's residence and interviewed her. (Id.) H also conducted a videotaped interview of her at the police station. (Id.) A portion of the interview

Order Denying Petition for Writ of Habeas Corpus; Denying Certificate of Appealability
P:\PRO-SE\SJ.Rmw\HC.09\Patterson536denhc.wpd

2

1  was played at trial, in which the victim was asked if she knew the difference between a penis and
2  a vagina. (Id.) The victim responded that a penis was similar to a long stick "sort of." (Id.) She
3  also explained that she was scared because her brother, S., had told her, "that people grab like
4  the [inaudible] when you're sleeping and you don't know what's going to happ . . . what's going
5  to happen with like, like if you're, if you don't know your dad or people that much, then and
6  something might, might happen at nighttime. That it was like, well he would grab my hand and
7  make a . . . and do something with it like put it on his thing and then he said after he's done with
8  that he might just murder you." (Id.)

9        The defense theory was that the victim was lying. (Id.) On cross-examination, the victim
10 did not remember when or where she learned the word, "wiener," to mean "penis." (Id. at 5.)
11 She denied having ever seen a penis before; denied having seen her brother's friend's "thing
12 out;" and denied having told Heylen that S. warned her that her dad might grab her hand and put
13 it on his penis. (Id.) The defense investigator testified that the victim had told her that she had
14 seen a friend's "thing hanging out" before. (Id.)

15       Petitioner's brother testified that petitioner had never been inappropriate with his 13-year
16 old daughter, or 11-year old son. (Id.) Petitioner's brother admitted that petitioner was
17 "obnoxious" though when he drank. (Id.) Petitioner testified that he never knew about the
18 victim until she was 3-years old because he and the victim's mother had a brief sexual
19 relationship. (Id.) He saw the victim again when she was 7, and then did not have any other
20 contact with the victim until she was 10-years old. (Id.) At that time, the victim called him to
21 ask him to go to a father-daughter dance with her, and he complied. (Id.) After the dance,
22 petitioner called the victim once a month and visited her once. (Id.) In October 2006, the
23 victim's mother called to tell petitioner that her children had been taken into protective custody,
24 and she asked petitioner to take custody of the victim. (Id.) He agreed, and the victim came to
25 live with him in early December 2006. (Id.)

26       Petitioner lived with his parents and, although he sometimes masturbated while sitting on
27 the couch, he had not done so while the victim had lived there. (Id. at 6.) Petitioner testified that
28

on December 8, 2006, he and the victim were watching scary movies together. (Id.) She got her pillow and blanket and lay next to him. (Id.) He got up three times to go outside for a cigarette. (Id.) The last time he came back inside, she had moved to the recliner. (Id.) Petitioner had four beers that night. The following morning, he did the laundry, which included the victim's blankets and pillow case, and his own blankets and pillow case. (Id.) Petitioner denied ever touching the victim inappropriately. (Id.)

The jury convicted petitioner of one count of lewd and lascivious conduct with a child under the age of 14, and found true that petitioner engaged in substantial conduct with the victim. (Id. at 1.) Petitioner was sentenced to eight years in prison. (Id.) Petitioner appealed, and the California Court of Appeal affirmed the judgment on March 19, 2009. (Resp. Ex. K.) The California Supreme Court denied review on June 10, 2009. (Resp. Ex. M.) Petitioner filed the instant federal action on July 27, 2009.

## LEGAL CLAIMS

Petitioner bring two claims in his habeas petition: (1) he was denied his rights to present a defense and to confrontation by the trial court's exclusion of evidence of (a) the victim's foster sister's conduct with the victim, and (b) the victim's observation of her mother having sex with three different men; and (2) he received ineffective assistance of counsel when counsel failed to object to the trial court's denial of the request to cross-examine the victim about her mother on the ground that it violated his right to confrontation.

## DISCUSSION

A.   Standard of Review

Because the instant petition was filed after April 24, 1996, it is governed by the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA), which imposes significant restrictions on the scope of federal habeas corpus proceedings. Under the AEDPA, a federal court may not grant habeas relief with respect to a state court proceeding unless the state court's ruling was "contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or "was

based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." Williams (Terry) v. Taylor, 529 U.S. 362, 412-13 (2000). "Under the 'unreasonable application clause,' a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id. "[A] federal habeas court may not issue the writ simply because the court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 411.

"[A] federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was 'objectively unreasonable.'" Id. at 409. In examining whether the state court decision was objectively unreasonable, the inquiry may require analysis of the state court's method as well as its result. Nunes v. Mueller, 350 F.3d 1045, 1054 (9th Cir. 2003). The "objectively unreasonable" standard does not equate to "clear error" because "[t]hese two standards . . . are not the same. The gloss of clear error fails to give proper deference to state courts by conflating error (even clear error) with unreasonableness." Lockyer v. Andrade, 538 U.S. 63, 75 (2003).

A federal habeas court may grant the writ if it concludes that the state court's adjudication of the claim "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). The court must presume correct any determination of a factual issue made by a state court unless the petitioner rebuts the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

///

**B.     Petitioner's Claims**

   1.     Exclusion of evidence

Defense counsel filed a pretrial motion for permission to cross-examine the victim regarding admissions she made to the police about being involved in sexual activity with her foster sister. (CT 118.) She told the police that her foster sister "would pretend like she was a dad and she would try to get up on me and try to kiss me and stuff." (Id.) Defense counsel proffered that this evidence would provide insight to the jury that the victim believed this conduct to be "dad-like" behavior, and that it was relevant to the victim's predisposition and credibility. (Id. at 118-19.) He moved for its admission under California Rule of Evidence § 782.[1] The trial court determined that, pursuant to state law, the offer of proof was not sufficiently similar to the acts with which the petitioner was accused. (Resp. Ex. B, RT 27.) Based on state law, the trial court denied the motion to admit the victim's statement, citing California Evidence Code §§ 782 and 352.

Defense counsel also requested that he be permitted to question the victim regarding her previous statement that she had observed her mother having sex with three different men on three separate occasions. (RT 209.) Counsel argued that he should be allowed to question the victim about those statements to show that she knew what male genitalia looked and felt like from sources rather than from the underlying incident with petitioner. (RT 210.) The trial court concluded that questioning the victim about "her exposure to sexual conduct" was too broad, but it would allow defense counsel to question the victim regarding her previous exposure to male genitalia. (Resp. Ex. B, RT 48.) Petitioner argues that the exclusion of these two pieces of

---

[1] Section 782(a)(2) provides in pertinent part that, where evidence of sexual conduct of the complaining witness is offered to attack the credibility of the complaining witness, "[a] written motion shall be accompanied by an affidavit in which the offer of proof shall be stated." The court must then make a determination regarding the sufficiency of the offer of proof. See Cal. Evid. Code § 782(a)(2). If the court finds the offer sufficient, it must conduct a hearing out of the presence of the jury, to allow questioning of the complaining witness as to the allegations in the offer of proof. See Cal. Evid. Code § 782(a)(3). The court must then decide whether the evidence is (1) relevant and (2) admissible under section 352. See Cal. Evid. Code § 782(a)(4).

Order Denying Petition for Writ of Habeas Corpus; Denying Certificate of Appealability
P:\PRO-SE\SJ.Rmw\HC.09\Patterson536denhc.wpd

evidence violated his right to present a defense and right to confrontation.

The California Court of Appeal rejected petitioner's claim. It determined that, with respect to the foster sister's conduct, viewing the victim's statement in the proper context revealed that the statement was not probative of the question of whether the victim fabricated the allegations against petitioner. (Resp. Ex. K at 8.) Prior to the victim's statement about her foster sister, Officer Heylen asked her whether she had ever made any allegations against her foster parents similar to the allegation against petitioner, and she denied that she had. (Id.) The victim then offered her statement regarding the foster sister. (Id.) She continued to say that she would push her foster sister off, which would make her foster sister cry, which got the victim into trouble. (Id.) The appellate court concluded that, in context, the requested statement did not tend to prove that the victim expected fathers to act in a similar manner with their daughters. (Id.) Further, the state court pointed out that the foster sister's role as the "dad" did not mean that the victim's role should be the daughter, as opposed to the "mom." (Id.) Moreover, the foster sister's attempts to kiss the victim were not sufficiently similar to the masturbation allegation against petitioner. Thus, concluded the court, the prohibited evidence had little, if any, probative value to the determination the victim's credibility. The appellate court relied on state law and recognized that the complete exclusion of evidence relevant to a defense could impair the right to due process, however, the exclusion of evidence on a minor point such as the challenged one did not. (Id. at 10.)

With respect to the exclusion of the victim's observation of her mother's sexual conduct, the appellate court stated that the victim never gave any particularly detailed description of her father's penis. (Id. at 8-9.) "It would not be unexpected for a child of 11 to know what a penis looked like, particularly a child who, like victim, had lived in close quarters with five siblings, at least two of whom were boys." (Id. at 9.) The court recognized that the trial court allowed petitioner to question the victim about her knowledge of male genitalia, albeit without specifically discussion her mother's conduct because at that point, "the additional evidence of victim's mother's conduct was irrelevant." (Id. at 9-10.)

Order Denying Petition for Writ of Habeas Corpus; Denying Certificate of Appealability
P:\PRO-SE\SJ.Rmw\HC.09\Patterson536denhc.wpd

7

"The Constitution guarantees criminal defendants 'a meaningful opportunity to present a complete defense.'" Holmes v. South Carolina, 547 U.S. 319, 324 (2006) (quoting Crane v. Kentucky, 476 U.S. 683 690 (1986)). Thus, the erroneous exclusion of critical, corroborative defense evidence violates the right to present a defense. DePetris v. Kuykendall, 239 F.3d 1057, 1062 (9th Cir. 2001) (citing Chambers v. Mississippi, 410 U.S. 284, 294 (1973), and Washington v. Texas, 388 U.S. 14, 18-19 (1967)). It is well-established, however, that "the right to present relevant testimony is not without limitation. The right 'may, in appropriate cases, bow to accommodate other legitimate interests in the criminal trial process.'" Rock v. Arkansas, 483 U.S. 44, 55 (1987) (quoting Chambers, 410 U.S. at 295). A criminal defendant "must comply with established rules of procedure and evidence designed to assure both fairness and reliability in the ascertainment of guilt and innocence." Chambers, 410 U.S. at 302. Thus, a criminal defendant "does not have an unfettered right to offer [evidence] that is incompetent, privileged, or otherwise inadmissible under standard rules of evidence." Taylor v. Illinois, 484 U.S. 400, 410 (1988).

For example, "well-established rules of evidence permit trial judges to exclude evidence if its probative value is outweighed by certain other factors such as unfair prejudice, confusion of the issues, or potential to mislead the jury." Holmes, 547 U.S. 319, 326(2006). The states have "broad latitude under the Constitution to establish rules excluding evidence from criminal trials. Thus, a rule, such as that set forth in California Evidence Code § 352, may be applied, consistently with the Constitution, to exclude relevant evidence sought to be introduced as part of the defense case. See Montana v. Egelhoff, 518 U.S. 37, 42 (1996) (addressing Section 352's federal counterpart, Rule 403 of the Federal Rules of Evidence). "Such rules do not abridge an accused's right to present a defense so long as they are not 'arbitrary' or 'disproportionate to the purposes they are designed to serve.'" United States v. Scheffer, 523 U.S. 303, 308 (1998) (citations omitted).

In Moses v. Payne, the Ninth Circuit pointed out that the Supreme Court had articulated these principles "in cases where defendants have argued that state evidentiary rules, by their own

Order Denying Petition for Writ of Habeas Corpus; Denying Certificate of Appealability
P:\PRO-SE\SJ.Rmw\HC.09\Patterson536denhc.wpd

terms, impinged upon their constitutional right to present a complete defense." 555 F.3d 742, 756-59 (9th Cir. 2009) (reviewing cases). The Ninth Circuit observed that these cases did not focus on whether a court's *exercise of discretion* in excluding evidence violated that right. See id. at 758 (emphasis added). Moses specifically addressed the application of section 2254(d)(1) to a petitioner's claim that his right to present a defense was violated by the exclusion of expert testimony pursuant to a Washington evidentiary rule that vested the trial court with discretion regarding the introduction of such evidence. 555 F.3d at 756-60. The Ninth Circuit observed that clearly established federal law does "not squarely address whether a court's exercise of discretion to exclude expert testimony violates a criminal defendant's constitutional right to present relevant evidence" or "clearly establish 'a controlling legal standard' for evaluating discretionary decisions to exclude the kind of evidence at issue here." Id. at 758-59 (citation omitted). The Ninth Circuit concluded that, "[b]ecause the Supreme Court's precedents do not establish a principle for evaluating discretionary decisions to exclude the kind of evidence at issue here, AEDPA does not permit us to rely on our balancing test to conclude that a state trial court's exclusion of [expert] evidence under [the state rule] violated clearly established Supreme Court precedent."[2] Id. at 760. Accordingly, the Ninth Circuit held that the state court decision affirming the exclusion of an expert witness's testimony about the victim's depression, on the grounds that the testimony would be cumulative and not sufficiently probative to outweigh its likely prejudicial and confusing effects, could not be found to violate the right to present a defense under the clearly established federal law and could not warrant relief under Section 2254(d)(1). Id.

---

[2] The Moses panel concluded that the "balancing test" applied in earlier Ninth Circuit decisions to assess the constitutionality of a trial court's discretionary decision to exclude evidence -- see, e.g., Miller v. Stagner, 757 F.2d 988, 994-95 (9th Cir.) (identifying the factors of the balancing test), amended on other grounds, 768 F.2d 1090 (9th Cir. 1985) -- "is a creation of circuit law," rather than clearly established Supreme Court precedent, for purposes of Section 2254(d)(1). Moses, 555 F. 3d at 759-60. Thus, the test did not apply to federal habeas review of a challenge to a state court's exercise of discretion to exclude expert testimony pursuant to a state evidentiary rule affording such discretion. Id.

Order Denying Petition for Writ of Habeas Corpus; Denying Certificate of Appealability
P:\PRO-SE\SJ.Rmw\HC.09\Patterson536denhc.wpd

1    Similarly here, petitioner claims that his constitutional right to present a complete
2    defense was violated by the trial court's discretionary decision to exclude the victim's statements
3    regarding her foster sister and her observations of her mother having sex, which was made by the
4    trial court pursuant to California Evidence Code §§ 782 and 352. (Resp. Ex. B, RT 27.)  As in
5    Moses, petitioner has not and cannot contended that Section 352 and/or Section 782, by their
6    terms alone, infringed upon his federal constitutional right to present a defense.  Rather, like in
7    Moses, petitioner's claim necessarily constitutes a challenge to the manner in which the trial
8    court exercised its discretion in excluding the requested testimony.  555 F.3d at 758.  As Moses
9    establishes, such a claim must fail on Section 2254(d)(1) review, because the Supreme Court has
10   not squarely addressed the issue of whether or when a state evidentiary rule requiring the
11   balancing of factors and the exercise of discretion may violate the federal right to present a
12   defense.  Thus, the claim rests on an unsettled legal proposition for purposes of Section
13   2254(d)(1) habeas review.  Id. at 760; see also Wright v. Van Patten, 552 U.S. 120, 126 (2008)
14   (per curiam) (relief is "unauthorized" under Section 2254(d)(1) when the Supreme Court's
15   decisions "given no clear answer to the question presented, let along one in [the petitioner's]
16   favor," because the state court cannot be said to have unreasonably applied clearly established
17   Federal law).[3]  Accordingly, the California Court of Appeal's decision rejecting petitioner's

---

[3]  Even assuming that petitioner claims could be analyzed as a general due process / right to present a defense claim under the Ninth Circuit's Miller balancing test, the claim would still fail.  Prior to Moses, to analyze if the exclusion of evidence violated the defendant's right to present a defense, whether the exclusion was pursuant to a correct or erroneous application of the evidentiary rules, the court would consider the following factors: (1) the probative value of the excluded evidence on the central issue; (2) its reliability; (3) whether it is capable of evaluation by the trier of fact; (4) whether it is the sole evidence on the issue or merely cumulative; and (5) whether it constitutes a major part of the attempted defense.  United States v. Stever, 603 F.3d 747, 755-56 (9th Cir. 2010) (quoting Miller v. Stagner, 757 F.2d 988, 994 (9th Cir. 1985)).
  As noted above, the California Court of Appeal found that exclusion of the victim's statements did not reasonably give the victim a basis for lying about petitioner.  The foster sister's attempts to get on top of and kiss the victim were nothing like the victim's allegations against petitioner.  The statement had little probative value to assessing the victim's credibility.  Further, while the statement was reliable, see Chia v. Cambra, 360 F.3d 997, 1004 (9th Cir. 2004), and capable of evaluation by the trier of fact, it was not the sole evidence of petitioner's

1   claim that the trial court violated his right to present a defense was not contrary to, or an
2   unreasonable application of, clearly established federal law.

3   Petitioner also claims that the exclusion of these statements violated his right to
4   confrontation. The California Court of Appeal relied on state law, concluding that a trial court's
5   limitation on cross-examination regarding a witness' credibility does not violate a petitioner's
6   right to confrontation "unless a reasonable jury might have received a significantly different
7   impression of the witness's credibility had the excluded cross-examination been permitted."
8   (Resp. Ex. K at 10.) The court determined that defense counsel conducted extensive cross-
9   examination of the victim, and the exclusion of these statements did not limit his cross-
10  examination in any significant way. (Id.)

11  The Confrontation Clause does not prevent a trial judge from imposing reasonable limits
12  on cross-examination based on concerns of harassment, prejudice, confusion of issues, witness
13  safety or interrogation that is repetitive or only marginally relevant. Delaware v. Van Arsdall,
14  475 U.S. 673, 679 (1986). The Confrontation Clause guarantees an opportunity for effective
15  cross examination, not cross examination that is effective in whatever way, and to whatever
16  extent, the defense might wish. See Delaware v. Fensterer, 474 U.S. 15, 20 (1985) (per curiam).
17  Trial judges therefore possess "wide latitude" to impose reasonable limits on cross-examination
18  of witnesses. See Van Arsdall, 475 U.S. at 679. A defendant meets his burden of showing a

---

credibility, and thus, those particular statements did not constitute a major part of the attempted defense.
   Moreover, the trial court allowed admission of the victim's statement that her brother, S., told her that if she did not know someone well, something might happen at night (Resp. Ex. K at 10), which is more probative and relevant than the foster sister situation. In addition, petitioner impeached the victim as to her having previously seen a penis, and the trial court permitted him to ask questions regarding the victim's prior opportunities to see a penis, thus making her observation about her mother's sexual activity cumulative. Further, defense counsel engaged in a lengthy cross-examination of the victim, pointing out "every inconsistency between and among the statements she had made [during] litigation." (Id.) As a result, even if the court reviewed this claim de novo, the exclusion of these statements did not deprive petitioner of his right to present a defense and did not violate due process by rendering his trial fundamentally unfair.

Order Denying Petition for Writ of Habeas Corpus; Denying Certificate of Appealability
P:\PRO-SE\SJ.Rmw\HC.09\Patterson536denhc.wpd

11

Confrontation Clause violation by showing that "[a] reasonable jury might have received a significantly different impression of [a witness'] credibility . . . had counsel been permitted to pursue his proposed line of cross-examination." Id. at 680; Slovik v. Yates, 556 F.3d 747, 753 (9th Cir. 2009).

Petitioner cites to Holley v. Yarborough, 568 F.3d 1091 (9th Cir. 2009), to support his argument. In Holley, the Ninth Circuit reversed and remanded a district court's conclusion that the exclusion of any testimony regarding the child victim's references to sex was constitutional. Id. The Ninth Circuit determined that the limitation requiring complete exclusion was unreasonable and disproportionate. Id. at 1099-1100. In contrast here, it was reasonable for the trial court to find that the evidence regarding the foster sister had minimal probative value, if any, to show a greater likelihood that the victim would fabricate charges, or to show that there she had been previously exposed to sexual conduct and had a prior basis for sexual knowledge. The record shows that the trial court allowed defense counsel to thoroughly cross-examine the victim, questioning her about: (1) her statement that her brother, S., told her it was possible that if she did not know her dad well, he could make her put her hand "on his thing" and then he might murder her (RT 223); (2) her prior statement that she had seen her brother's friend's penis before (RT 233-35); and (3) many inconsistencies between her trial testimony and previous statements to the police and her family, thereby impeaching her credibility. In view of the foregoing, it cannot be said that a reasonable jury would have received a significantly different impression of the victim's credibility had the excluded evidence regarding her statement about her foster sister been admitted. See Van Arsdall, 475 U.S. at 680; see also Perry v. Rushen, 713 F.2d 1447, 1453 (9th Cir. 1983) ("Evidence of little importance, whether merely cumulative or of little probative value, will almost never outweigh the state interest in efficient judicial process.").

Similarly, the victim's observation of her mother's sexual activity bore no probative value to the victim's prior knowledge of the physical attributes of a penis. In the proffered

Order Denying Petition for Writ of Habeas Corpus; Denying Certificate of Appealability
P:\PRO-SE\SJ.Rmw\HC.09\Patterson536denhc.wpd

12

statement, the victim did not state that she had seen any of her mother's partner's penises,[4] and it was not unreasonable for the trial court to limit cross-examination to questions regarding the victim's prior knowledge of male genitalia. Petitioner was able to ask the victim about her previous statement that she had seen her brother's friend's penis before, and it was reasonable for the appellate court to surmise that an 11-year old girl who lived with at least three male siblings might have seen a penis prior to the incident with petitioner. Thus, further questioning specifically about the victim's mother's sexual activity would not only be cumulative, but also prejudicial and not probative to the question of whether the victim had gained knowledge of male genitalia prior to the crime. See Plascencia v. Alameida, 457 F.3d 1190, 1202 (9th Cir. 2006) (rejecting appellant's Confrontation Clause claim, and finding reasonable the trial court's conclusion that excluded evidence was repetitive and cumulative, and therefore, unnecessary).

Based on this record, a reasonable jury would not have had a significantly different impression of the victim's credibility if counsel had been allowed to question her about the statement about her foster sister or her observations of her mother having sex. See Van Arsdall, 475 U.S. at 680. Accordingly, the California Court of Appeal's conclusion that the trial court's exclusion of this testimony did not violate petitioner's right to confrontation cannot be said to be contrary to, or an unreasonable application of, any clearly established federal law.

2.      Ineffective Assistance of Counsel

Petitioner claims that trial counsel was ineffective because, although he objected to the trial court's exclusion of evidence regarding the victim's observations of her mother engaging in sex, he did not object on the ground that it violated his right to confrontation.

In order to prevail on a Sixth Amendment ineffectiveness of counsel claim, petitioner must establish two things. First, he must establish that counsel's performance was deficient, i.e.,

---

[4] The defense investigator notes remarked, "She recalled that she walked in a bedroom and saw Brian, who worked at a rental store, and her mother on top of each other. She also recalled that she saw her mother having sex with John, Lanarial's dad, when John was living with them. She also recalled seeing her mother have sex with Dan, who played in a band." (Resp. Ex. D, RT 209.)

Order Denying Petition for Writ of Habeas Corpus; Denying Certificate of Appealability
P:\PRO-SE\SJ.Rmw\HC.09\Patterson536denhc.wpd

1  that it fell below an "objective standard of reasonableness" under prevailing professional norms.
2  <u>Strickland v. Washington</u>, 466 U.S. 668, 686 (1984).  Second, he must establish that he was
3  prejudiced by counsel's deficient performance, i.e., that "there is a reasonable probability that,
4  but for counsel's unprofessional errors, the result of the proceeding would have been different."
5  <u>Id.</u> at 694.  A reasonable probability is a probability sufficient to undermine confidence in the
6  outcome.  <u>Id.</u>

7  Where the defendant is challenging his conviction, the appropriate question is "'whether
8  there is a reasonable probability that, absent the errors, the factfinder would have had a
9  reasonable doubt respecting guilt.'" <u>Luna v. Cambra</u>, 306 F.3d 954, 961 (9th Cir. 2002) (quoting
10 <u>Strickland</u>, 466 U.S. at 695).  <u>See, e.g.</u>, <u>Plascencia</u>, 467 F.3d at 1201 (9th Cir. 2006) (ineffective
11 assistance of counsel claim not established because "any prejudicial effect was at best minute"
12 from counsel's failure to object to evidence about existence of a drug in murder defendant's
13 system where only killer's identity was in dispute).  Based on the state appellate court's
14 conclusion above that admission of the victim's mother's activities would more prejudicial than
15 probative, as well as cumulative to the other questions defense counsel was permitted to explore
16 regarding the victim's knowledge of male genitalia, petitioner cannot show that he was
17 prejudiced by counsel's failure to object on the ground that the exclusion violated his right to
18 confrontation.

19 Accordingly, the state court's conclusion rejecting petitioner's ineffective assistance of
20 counsel claim was not contrary to, or an unreasonable application of, clearly established federal
21 law.

## CONCLUSION

23 For the reasons set forth above, the court concludes that petitioner has failed to show a
24 violation of his federal constitutional rights in the underlying state criminal proceedings.
25 Accordingly, the petition for writ of habeas corpus is DENIED.  The clerk shall close the file.

## CERTIFICATE OF APPEALABILITY

27 The federal rules governing habeas cases brought by state prisoners require a district
28

Order Denying Petition for Writ of Habeas Corpus; Denying Certificate of Appealability
P:\PRO-SE\SJ.Rmw\HC.09\Patterson536denhc.wpd

14

court that denies a habeas petition to grant or deny a certificate of appealability ("COA") in its ruling. Petitioner has failed to make a substantial showing that his claims amounted to a denial of his constitutional rights, or demonstrate that a reasonable jurist would find the denial of his claims debatable or wrong. <u>Slack v. McDaniel</u>, 529 U.S. 473, 484 (2000). Accordingly, a COA is DENIED.

IT IS SO ORDERED.

DATED: 3/2/11

RONALD M. WHYTE
United States District Judge